E-FILED
Wednesday, 03 June, 2026  11:16:51 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAVID COSENZA, on behalf of himself and all others similarly situated, | Case No. 1:26-cv-01132-MMM-RLH |
| Plaintiff, | District Judge: Hon. Michael M. Mihm |
| v. | Mag. Judge: Hon. Ronald L. Hanna |
| 2GIG and NICE NORTH AMERICA, LLC, | |
| Defendants. | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

Defendant Nice North America LLC ("Nice") hereby respectfully moves to dismiss the putative first amended class action complaint (Dkt. 8, "FAC") filed by Plaintiff David Cosenza ("Plaintiff") in this matter pursuant to Fed. R. Civ. P. 12(b)(6), in its entirety and <u>with prejudice</u>.

## INTRODUCTION

Like its defective predecessor (*see generally* Dkt. 1), Plaintiff's FAC alleges, in conclusory fashion, that Nice violated the "artificial or prerecorded voice" restrictions of the Telephone Consumer Protection Act (the "TCPA"), *i.e.,* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff's claim still rests squarely on <u>one</u> supposedly "pre-recorded telemarketing call" that he baldly concludes "Defendant and/or its agents" made to his cell phone number without his consent. Dkt. 8, ¶¶ 14-26, 30, 38, 42. In other words, even after Nice pointed out this fatal pleading defect in its previous motion (*see generally* Dkt. 5), Plaintiff still contends, without requisite factual support, that ***either Nice and/or countless unidentified third parties*** are responsible for this one alleged call. However, such deficient allegations cannot survive dismissal in any federal case under Rule 12(b)(6), let alone under the weight of applicable federal authority on the standards for properly pleading TCPA claims.

While the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, its remedial purpose does not afford TCPA plaintiffs special pleading deference or give those armed with mere conclusions a free pass to discovery. This is for good reason, as even the FCC as noted that the TCPA has unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" ever since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Yet, this is unsurprising given the broad financial relief the TCPA affords entrepreneurial plaintiffs ($500 per call, trebled to $1,500 for willful/knowing violations, *see* 47 U.S.C. § 227(b)(3)) and the ease with which facially baseless claims can be

1

brought, styled as class actions, and quickly settled on an individual basis before class certification and trial for far beyond their individual value. And while attorneys' fees are not afforded under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from innocent defendants (like Nice) through the threat of expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). *See also Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (discussing one purpose of the *Iqbal/Twombly* pleading standard is to prevent "settlement extortion" and noting plaintiffs can sometimes "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit") (citations omitted).

Thus, given this high potential for abuse by entrepreneurial plaintiffs and their counsel, federal courts have widely recognized that they must dutifully fulfil their critical "gatekeeping" role under the Federal Rules to ensure TCPA claims have sufficient plausible factual support, before subjecting defendants to the high cost of discovery and trial. As such, district courts across the country, including in this Circuit, routinely dismiss TCPA complaints lacking in such requisite facts at the pleadings stage, while still honoring the statute's intended remedial purpose. For the reasons below, Plaintiff's ill-pled FAC in this case should suffer the same fate, as it still attempts to foist TCPA liability on Nice without properly identifying who actually called him, even after amendment.

Indeed, as one federal district court noted when dismissing a similarly-deficient complaint, the caller's "identity is a ***necessary*** element of ***all***" TCPA claims. *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (emphasis added). Along these lines, it is well established in the Seventh Circuit and nationally that, to successfully plead any TCPA claim and avoid dismissal under Rule 12(b)(6), all plaintiffs must first "identify" the caller by adequately

alleging a theory of liability under the TCPA against the defendant—*i.e.,* direct or vicarious liability—regardless of whether they plead facts supporting the other essential elements of their claim. *See, e.g., Warciak v. Subway Rests., Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *Lightfoot v. SelectQuote, Inc.*, 2025 WL 1547495, at *3 (N.D. Ill. May 30, 2025); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (citing *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) and *Moore v. CHW Group*, 2019 WL 3216029, at *2 (N.D. Ill., Jul. 17, 2019)); *Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022); *Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2018 WL 835222, at *5-6 (N.D. Ill. Feb. 13, 2018); *Fisher v. Alarm.com Holdings, Inc.,* 2018 WL 5717579, at *3-4 (N.D. Ill. Nov. 1, 2018) (each dismissing). This steadfast rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts and without the benefit of discovery, that either Nice: (i) itself, and not a third party, literally took the steps necessary to "physically" place the call at issue directly to him, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with a third party who did physically place the subject calls (the touchstone of which in a TCPA case is having "control" over the "manner and means" of that third party's telemarketing campaign), as required to plead vicarious TCPA liability. *Id.*

At the same time, it is equally well-established that merely parroting the statutory text or case law, taking an equivocating "either/or" approach, and concluding that the "defendant and/or its agents" made the subject calls is insufficient to plead such theories, without more. As that is all Plaintiff did in this case, his entire FAC promptly collapses under the weight of applicable federal authority and, thus, it should be dismissed under Rule 12(b)(6). And as the FAC represents his second attempt to state a plausible TCPA claim, and he failed to do so despite having the benefit of Nice's

previous motion to dismiss outlining these defects when amending, Plaintiff should not be afforded a third opportunity. Therefore, the entire FAC should be dismissed with prejudice.

## RELEVANT ALLEGATIONS

In pertinent part, Plaintiff still concludes that "Defendant made at least one pre-recorded telemarketing call to [him] in [*sic*] February 9, 2026" without his consent. Dkt. 8, ¶¶ 16-19.[1] Though he partially identifies a cell phone number that he claims is his number, Plaintiff is still unclear on whether this one call was made to or received on that number after amending. *See id*. ¶¶ 14, 15.

In any event, Plaintiff still claims that, when he answered this one call, "he heard a pre-recorded telemarketing message advertising home security and monitoring devices." *Id*. ¶ 20. He further alleges that, "[a]fter the [supposed] pre-recorded message concluded, he pressed '1' to speak with a live representative," and then Plaintiff was subsequently "connected with" (*i.e.*, transferred to) a live person, who supposedly "informed him that the company's website is www.2gig.com." *Id*. Based entirely on the foregoing allegations, Plaintiff still concludes that "***Defendant and/or its agents*** transmitted unwanted telephone calls to" him and the putative class members "using a pre-recorded voice message" in purported violation of Section 227(b) of the TCPA. *Id*. ¶¶ 38, 42 (emphasis added). Plaintiff also continues to seek to represent a putative nationwide class consisting of "[a]ll persons in the United States who … (1) ***Defendant, or an agent calling on behalf of the Defendant,*** called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff." *Id*. ¶ 24 (emphasis added).

Rather than plead any supporting facts clarifying who he contends actually called him in this case, Plaintiff's FAC muddies the proverbial waters here in several key ways. **First**, despite only using the singular term "Defendant" throughout his original complaint and his FAC, Plaintiff now

---

[1] Though Plaintiff claims that there was "at least one" call, no others are described in the FAC.

alleges (albeit only once) that there are two "Defendants" in this case, "2GIG and Nice North America," without differentiating between their conduct. Dkt. 8, ¶ 8. **Second**, despite the alleged message not identifying Nice in any way or providing any other facts identifying Nice as the caller, Plaintiff now concludes that "either Nice or one of Nice's agents must have made the call" because, according to him, it is "implausible to assume otherwise—that there are roving telemarketers with no relationship with Nice whatsoever, attempting to sell Nice's products to consumers and referring consumers to Nice's website." *Id*. ¶ 21. **Third**, despite adding no other supporting facts, Plaintiff now concludes that (i) "[e]ven if some third party placed the call on Nice's behalf that third party was Nice's agent" and (ii) "[u]pon information and belief" that "Nice is [vicariously] liable for such conduct under theories of apparent and actual authority." *Id*. ¶¶ 22- 24. **Fourth**, despite alluding to two different agency theories, the FAC does not allege facts supporting an actual authority (or what Plaintiff also calls a "classical" agency) theory regarding Nice's "control" over the caller; and instead it concludes that "[a]t a minimum any party calling consumers and referring them to Nice's website was acting with Nice's apparent authority because it is completely implausible to believe that telemarketers are referring consumers to Nice's website without being directed or encouraged to do so by Nice in some way." *Id*. ¶ 25. **Finally**, in a tacit concession he does not know who actually called him, Plaintiff now asserts "[t]he actual relationship between Nice and [a] possible third-party calling consumers and referring them to Nice's website will be revealed during discovery." *Id*. ¶ 26. As shown below, these allegations are fatally deficient and do not meet federal pleading standards.

### APPLICABLE LEGAL STANDARDS

A "bare assertion" and "conclusory allegation[s]" will not suffice to avoid dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to

relief." *Id*. (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also id*. (all federal pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (ruling similarly). In short, "[t]o survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)).

Put differently, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). The Seventh Circuit has thus interpreted *Twombly* and "*Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading…, rather than providing some ***specific facts*** to ground those legal claims[.] [Such plaintiffs] ***must do more***." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). And while this Court must generally accept well-pled factual allegations as true when ruling on a Rule 12(b)(6) motion, conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions couched as fact need not be taken as true. *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 465 (7th Cir. 2010); *Stachowski v. Town of Cicero,* 425 F.3d 1075, 1078 (7th Cir. 2005); *Iqbal*, 556 U.S. at 678–79.

## ARGUMENT

### I.    Plaintiff Fails to Plausibly Allege a TCPA Liability Theory.

Plaintiff's entire FAC is subject to dismissal with prejudice because Plaintiff still fails to plausibly allege a theory of liability under the TCPA against Nice. Again, it is well-established that

6

there are "two potential theories of liability under the TCPA" that must be adequately pled in accordance with federal pleading standards in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). As one court summarized this rule, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call"—and of course, there must be actual ***facts*** pled supporting such theories. *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts in the Seventh Circuit have firmly adopted this rule. *See, e.g., Warciak*, 2019 WL 978666, at *2; *Lightfoot*, 2025 WL 1547495, at *3; *Woodard,* 2024 WL 942629, at *2-3 (citing *Brownlee,* 2021 WL 4306160, at *1–2 and *Moore,* 2019 WL 3216029, at *2); *Bennett,* 2022 WL 865837, at *3; *Cunningham,* 2018 WL 835222, at *5-6; *Fisher,* 2018 WL 5717579, at *3-4 (each dismissing on one or both of these bases).

Further, failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u> under Rule 12(b)(6), regardless of whether facts were pled supporting other elements of the asserted claim. *See, e.g., id.*; *see also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the ***first elements*** of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.) (emphasis added); *Gulden*, 2017 WL 3841491, at *3 (ruling similarly); *Brownlee,* 2021 WL 4306160, at *1 (dismissing and holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added). Here, Plaintiff's Complaint fails to plausibly allege either theory.

As to the former theory, federal courts across the country have uniformly recognized that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "physically place" each call at issue directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (discussing accepted standards for sufficiently pleading TCPA liability theories and dismissing).[2]

In other words, for direct TCPA liability, the defendant itself must literally pick up the phone and physically call the plaintiff directly. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing claim brought by some of the same counsel representing Plaintiff on this basis where the plaintiffs did not plausibly allege the "[d]efendant itself" physically made the calls at issue); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing claim brought by some of the same counsel representing Plaintiff on this basis, holding: "At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."). *See also Warciak*, 2019 WL 978666, at *2 (dismissing, in part, on this basis because the plaintiff did not sufficiently allege defendant "physically sent out the text messages at issue"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019) (dismissing on this basis where the plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that [the defendant itself] actually, physically initiated the

---

[2] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear ***majority rule***.

telephone calls at issue"); *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing where "none of [the plaintiff's] factual allegations" in the complaint at bar, "even if accepted as true, establish[ed] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a phone call directly to the plaintiff); *Bank v. Consumer Tax Advoc., LLC,* 2025 WL 1640500, at *7–8 (E.D.N.Y. Feb. 5, 2025) (dismissing where there was "no direct allegation [pled] that [the defendant] was the entity that actually initiated the call" at issue); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where the plaintiff "provide[d] no details specifying how [plaintiff] knew that [the defendant] in fact [physically] placed these calls").

Conversely, direct TCPA liability cannot be based on calls made by third parties and "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett,* 2022 WL 865837, at *3 (dismissing on this basis, holding "a [TCPA] defendant 'generally does not initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). Similarly, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) ("Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken."). Rather, both logically and as a matter of established federal law, there must be a "direct connection between a person or entity and the making of a call" for <u>direct</u> TCPA liability to attach. 30 FCC Rcd. at 7980.

9

To meet federal pleading requirements in this regard, however, "[m]erely alleging that [a defendant and/or an agent] 'made' or 'initiated' [a] call" in a conclusory fashion, as Plaintiff did here, "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding that TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing TCPA claim brought by some of the same counsel representing Plaintiff on this basis, where the plaintiffs merely concluded that one defendant "physically" placed the subject calls, noting that the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

Countless other courts, in this Circuit and elsewhere, have ruled similarly and thus have often dismissed such faulty TCPA claims on this basis under Rule 12(b)(6). *See, e.g., Woodard,* 2024 WL 942629, at *3 (dismissing TCPA case brought by some of the same counsel representing Plaintiff, and holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal.") (citing, *inter alia, Brownlee* and *Moore*); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing TCPA case brought by some of the same counsel representing Plaintiff on this basis, and holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent."); *Belleville*

10

*v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without additional factual enhancement); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing and holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though the plaintiff was somehow "informed" by the alleged caller that "the [subject] call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls" in the complaint); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing and holding that the plaintiff's allegations that the alleged calls were "from Defendant, its employees and/or agents" were insufficient to plead a TCPA liability theory). So should this Court in this instance.

In short, "simply asserting a purported fact" as to the caller's identity, as Plaintiff has attempted here, "does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim on this basis). Rather, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is legally required] to provide greater detail'" without discovery to plausibly allege a direct TCPA liability theory under the *Iqbal/Twombly* standard. *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing for failing to plead a TCPA liability theory).

Applying these firmly-rooted principles here, it is readily apparent that Plaintiff failed to plead sufficient facts, beyond his bald conclusions, supporting a plausible inference that Nice itself

11

(as opposed to some third party) physically placed a phone call to him directly, as is required to adequately plead a direct TCPA liability theory. Rather, Plaintiff's FAC is notable more for the facts it does not contain on this front, rather than the few (if any) facts it does contain. For example, even after Nice pointed this out in its previous motion (*see* Dkt. 5 at 10), Plaintiff's FAC does not allege (nor even state in a conclusory fashion), *inter alia*, that: (i) Nice owns or uses the phone number used to call him (which is not even provided in the FAC); (ii) he called that number back and reached Nice; (iii) Nice's name appeared on his Caller ID; (iv) the live person to whom he was transferred by the initial caller identified him/herself as an Nice "employee"; or (v) Nice's name was mentioned in the alleged initial "prerecorded" message—all of which ***could*** possibly support an inference of direct TCPA liability in ***some*** cases, if properly pled, as other courts have held. *See, e.g., Matthews,* 2025 WL 1181789, at *3; *Wilson,* 2025 WL 2856295, at *4; *Aaronson,* 2019 WL 8953349, at *2-3; *Rogers*, 2023 WL 2646468, at *5; *Doyle*, 2023 WL 3984951, at *4-6; *Smith,* 2021 WL 4623275, at *3-4; *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019) (each dismissing where complaints lacked such critical contextual details about the subject calls). The continued omission of such easily-pled facts here is fatal to Plaintiff's FAC on direct TCPA liability grounds.

Instead, just like he did for his original complaint, Plaintiff has merely adopted a classic "either/or" approach for his FAC that countless federal courts have firmly rejected as insufficient to plausibly allege any TCPA liability theory. In that regard, Plaintiff still baldly concludes, with zero factual support, that "***Defendant and/or its agents transmitted***" the subject phone call to him. Dkt. 8, ¶ 42; *see also id.* ¶ 8 (alleging that there are two "Defendants"); ¶ 21 (concluding that "either ***Nice or one of Nice's agents*** must have made the call."); ¶ 30 (Plaintiff's proposed class definition, including persons who received calls made by "***Defendant, or an agent calling on behalf*** of the Defendant"); ¶ 38 (referring to "Defendant and/or its agents" having records of the call at issue);

Prayer for Relief at p. 9 (seeking a "[a] declaration that ***Defendant and/or their affiliates, agents, and/or other related entities'*** actions complained of herein violate the TCPA") (all emphases added).

In other words, Plaintiff still contends that either Nice and/or countless unidentified third parties called him. However, courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of any sort." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is particularly true when it comes to properly pleading TCPA liability theories, as the many directly on-point authorities cited above (among many others) show. *See, e.g., Dobronski*, *Murray*, *Wilson*, *Woodard*, and *Doyle*, *supra*; *Melito,* 2015 WL 7736547, at *4 (dismissing and holding that "Plaintiffs' conclusory assertions that [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement."); *Bank v. Philips Elec. No. Amer. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (plaintiff's allegations the subject calls "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible [TCPA] claim").

That Plaintiff was later "connected with" a live person who provided him a website after he listened to a "message" from the initial caller (*see* Dkt. 8, ¶ 20)—a message which did not identify Nice—does not move the needle on his claim from "possible" to "plausible" for several reasons. Firstly, myriad courts have correctly recognized that even a call allegedly offering the defendant's products, identifying the defendant by name, or providing the defendant's website or contact information does not, standing alone, allow for a plausible inference that the defendant <u>itself</u> (as opposed to a third party) physically made or initiated a phone call directly to the plaintiff for direct TCPA liability purposes. *See*, *e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (finding no direct liability, even though at-issue text identified the defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly

said they were calling "from" the defendant and provided its website, where plaintiff merely alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Abante Rooter,* 2018 WL 288055, at *4 (dismissing on this basis where the complaint contained only conclusory allegations that callers represented they "were calling 'on behalf of Defendant'" and "allegations that baldly assert the caller was a representative of defendant" without additional factual enhancement); *Murray*, 2015 WL 4204398, at *2 (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Scruggs*, 2020 WL 9348208, at *6-10 (dismissing on this basis, calls from someone who stated they were "associated with" the defendant deemed insufficient without more). Together, these well-reasoned authorities (among others) show that the alleged content of a call alone is not dispositive of this issue.

This widely-accepted analytical approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) reflects a proper application of the *Iqbal*/*Twombly* pleading standard in TCPA cases and is in recognition that today companies often hire third parties to handle their outbound communications. *See, e.g., Bennett,* 2022 WL 865837, at *3 ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). A call placed by a third party vendor on behalf of the defendant would naturally identify the defendant or its products by name or provide

14

its website, which is the whole point of hiring a vendor. But that call would not have been <u>physically</u> placed by the defendant <u>itself</u> directly to the plaintiff, which is what matters on this point. Again, both logically and as a matter of settled federal law, a defendant's possible indirect connection to a call placed by a third party is not "direct" TCPA liability for the defendant. *See* 28 FCC Rcd. at 6583.

Moreover, that Plaintiff was later "connected with"—*i.e.,* ***transferred to***—someone else by the initial unidentified caller belies any reasonable inference of direct TCPA liability in this case. Indeed, it is well accepted that transferring a call ***to*** the defendant is not the functional equivalent of the defendant itself physically placing a call directly to the plaintiff as required for direct TCPA liability to attach—and rather that it is the defendant who is ***receiving*** the call in such cases—as numerous courts have found. *See, e.g., Cunningham*, 2023 WL 3985245, at *2 (dismissing on direct liability grounds where plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding that such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted). *See also Bank*, 2024 WL 1332635, at *4; *Barnes,* 2023 WL 2592371, at *3; *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018) (each dismissing TCPA claims on direct liability grounds under Rule 12(b)(6) where the initial calls were allegedly transferred to the defendant by an unidentified caller). This Court should rule similarly.

In sum, "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" on direct liability grounds. *Woodard,* 2024 WL 942629, at *3. This Court should rule similarly, as Plaintiff plainly did not do so here, and therefore it should dismiss Plaintiff's FAC on direct TCPA liability grounds.

15

Plaintiff's efforts to state a plausible vicarious TCPA liability theory fare no better. As noted above, federal courts apply common law agency principles to determine vicarious liability under the TCPA. *See, e.g., Clemons v. State Farm Mut. Auto. Ins. Co.,* 2020 WL 4193997, at *3–6 (C.D. Ill. July 21, 2020); *Warciak*, 949 F.3d at 354-357 (discussing applicable agency principles in the TCPA context). Here, despite still including legal buzzwords (*e.g.,* "agents") suggestive of possible third party involvement, adding a new Defendant, and making new legal conclusions as to applicable agency theories, Plaintiff does not assert any plausible factual allegations in his FAC remotely supporting an inference that Nice was in a common law agency relationship with any third party that called him, as required to plead vicarious TCPA liability. *See, e.g., Wilson*, 2025 WL 2856295, at *4 (dismissing on this basis, noting that "[W]hile alleging that 'Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA,' [], the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such 'unadorned labels' are insufficient as a matter of law to allege any agency relationship.") (internal citations omitted). Nor does Plaintiff allege that Nice had specific "control" over the "manner and means" of any third party's telemarketing campaign—*i.e.,* literally, who to call, when, how, the content, etc.—which is the accepted touchstone of actual authority for vicarious liability in a TCPA case and must also be adequately pled. *See, e.g., Warciak*, 2019 WL 978666, at *2-3; *Cunningham*, 2023 WL 3985245, at *2; *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all dismissing where TCPA complaints omitted facts showing such "control").

Plaintiff's new conclusory "apparent authority" theory (*see* Dkt. 8, ¶ 25) does not save him from dismissal on vicarious liability grounds, as the FAC "does not allege that there was any communication from [Nice] to [him], so as to qualify as a 'manifestation of the principal.'" *Warciak*, 2019 WL 978666, at *2-3 (citing Restatement (Third) of Agency § 2.03 cmt. c (2006)). Moreover,

Plaintiff does not allege that he reasonably ***relied*** on anything Nice said to him. *See Warciak*, 949 F.3d at 357 (affirming dismissal where complaint failed to sufficiently allege that plaintiff "reasonably relied, to his detriment, on any apparent authority" that principal conferred to agent). Thus, Plaintiff's FAC should be dismissed on vicarious TCPA liability grounds, as well. *See, e.g., Warciak, Woodard*, *Wilson*, and *Bennett, supra*; see also *Cunningham,* 2018 WL 835222, at \*5-6; *Lightfoot,* 2025 WL 1547495, at \*3; *Fisher,* 2018 WL 5717579, at \*3-4 (all dismissing on this basis where, as here, TCPA plaintiffs did not allege plausible facts supporting agency theories).[3]

Lastly, the proverbial "death knell" to Plaintiff's efforts to state a plausible TCPA liability theory is that he now suggests in his pleading that he needs "discovery" to do so. *See* Dkt. 8, ¶ 26 ("The actual relationship between Nice and possible third-party calling consumers and referring them to Nice's website will be revealed during discovery."). It is axiomatic the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Rather, as one district court dismissing a TCPA claim on these grounds aptly held:

> As master[s] of [their] Complaint, it is [a plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc*., 2015 WL 13648356, at \*2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer,* 2018 WL 4854082, at \*4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). *See also Beckman v. Chicago Bear Football Club, Inc.*, 2018 WL

---

[3] That the call was supposedly transferred to someone who provided him with a website does not, standing alone, support an inference of vicarious liability. *See Landy*, 2021 WL 3634162, at \*3-5.

17

1561719, at *7 (N.D. Ill. Mar. 30, 2018) ("The complaint must still state a plausible claim to unlock the door to discovery."). Put in context of this case, Plaintiff's pled suggestion in his FAC that he "needs discovery to confirm who called him and how that person is related to" Nice shows that he is merely "on an impermissible fishing expedition" and is not pleading actual facts in accordance with *Iqbal*/*Twombly*; and it further confirms that he actually does "not know who called" him and thus that he has not adequately pled any TCPA liability theory against Nice in this case, as required. *Scruggs*, 2020 WL 9348208, at *6–7, 10 (dismissing TCPA complaint on these bases).

\* \* \*

All told, Plaintiff's failure to properly allege a plausible direct or vicarious TCPA liability theory here is not some minor pleading defect to be swept under the rug and sorted out in discovery. Rather, as the many on-point authorities cited above dismissing similarly ill-pled TCPA claims show, this is a critical legal distinction that myriad courts have found must be properly pled in every case before subjecting defendants to discovery, liability, and potential statutory damages—all of which can be costly and potentially ruinous, especially in class actions like this one. As Plaintiff failed to do so here, his entire FAC should also be dismissed under Rule 12(b)(6) on these bases.

## II.     Any Dismissal Should Be With Prejudice.

Finally, federal courts may properly dismiss complaints with prejudice pursuant to Rule 12(b)(6) where, as here, a plaintiff already had a chance to amend (particularly in response to a dispositive motion) but the amendment failed to cure the previous complaint's deficiencies. *See, e.g., Laborforce, LLC v. Auto. Mechanics' Union Loc. No. 701, IAMAW, AFL-CIO*, 2021 WL 1239216, at *3 (N.D. Ill. Apr. 2, 2021); *see also Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies

18

noticed in [d]efendants' prior motions"). Here, Nice already pointed out all the fatal pleading defects discussed above in its initial motion to dismiss (*see generally* Dkt. 5), but Plaintiff's FAC failed to cure them, and in some ways made those defects far worse with more bald conclusions. That Plaintiff did not plead such facts when amending must mean no additional facts exist, and thus any further amendment would be futile. As such, Nice submits that a dismissal with prejudice is warranted here.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss Plaintiff's entire FAC with prejudice under Rule 12(b)(6), along with granting all other relief deemed just and proper.[4]

Dated: June 3, 2026

Respectfully submitted,

By: /s/ *A. Paul Heeringa*

A. Paul Heeringa (IL Bar # 6288233)
**Manatt, Phelps & Phillips, LLP**
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Defendant*

---

[4] Nice has not yet determined whether Plaintiff's claim is subject to an arbitration agreement between the parties. As such, Nice submits this motion to meet its immediate obligations to file a responsive pleading under Rule 12, and does not waive its arbitral rights. If or when Nice makes such an determination, it will promptly move to compel arbitration, if necessary.

19

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(4)

The undersigned hereby certifies that, in accordance with Local Rule 7.1(B)(4), the foregoing contains **6,563** words, according to the word count feature on Microsoft Word, including headings, footnotes, and quotations, but not including the cover page, signature block, and certificates.

*/s/ A. Paul Heeringa*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on, June 3, 2026, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.

*/s/ A. Paul Heeringa*

20