E-FILED
Tuesday, 04 August, 2026  04:56:25 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| DAVID COSENZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 1:26-cv-1132 |
| NICE NORTH AMERICA, LLC, | ) | |
| *d/b/a* 2GIG, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

On May 20, 2026, Plaintiff David Cosenza ("Plaintiff") filed his First Amended Complaint ("FAC") against Defendant Nice North America, LLC, d/b/a 2GIG ("Defendant"). D. 8. Now before the Court is Defendant's [10] Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the FAC with prejudice. For the reasons below, the Motion is GRANTED in part and DENIED in part. The FAC is dismissed without prejudice.

## I.    BACKGROUND[1]

The present action stems from a phone call Plaintiff received on February 9, 2026 (hereinafter, "February call"). Upon answering the February call, Plaintiff heard a prerecorded telemarketing message advertising home security and monitoring services. The voice of this initial message sounded artificial, there were noticeable delays within the delivery of the message, and there was no indication that the message was personalized to Plaintiff. At the conclusion of the recorded message, Plaintiff requested to speak with a representative. He was then connected with a live person, "who informed him that the company's website is www.2gig.com." D. 8 at 4.

---

[1] The following factual allegations stem from the Plaintiff's Complaint. *See* D. 8. At this stage in the litigation, the Court accepts all well-pleaded allegations in Plaintiff's Complaint as true. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

Defendant offers the products marketed in the initial portion of the call. Plaintiff had not previously consented to receive telemarketing calls nor requested information from Defendant. Plaintiff further had not previously solicited any of Defendant's services.

Based on the above facts, Plaintiff alleges that Defendant violated 47 U.S.C. § 227 Telephone Consumer Protection Act ("TPCA").  Plaintiff seeks to bring this action on behalf of a putative class consisting of "[a]ll persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff" D. 8 at 6.

## II.     LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021).  The purpose of a motion to dismiss is not to resolve the merits of a claim but instead tests the sufficiency of the allegations in a complaint. Courts must determine whether, after treating all allegations in the complaint as true and drawing factual inferences in the plaintiff's favor, the plaintiff has stated a claim for relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678; *see also Kahn v. Walmart Inc.*, 107 F.4th 585, 593–94 (7th Cir. 2024).

## III.     DISCUSSION

Plaintiff seeks to bring this class action against Defendant for its violation of the TPCA. Prior to discussing the present Motion, the Court will first briefly summarize the TPCA.

2

1. TPCA

The TPCA regulates the marketing of goods and services by telephone, commonly referred to as "telemarketing." *Clemons v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, at *1 (C.D. Ill. July 21, 2020). Recognizing that telemarketing may constitute "an intrusive invasion of privacy," Congress enacted the TPCA to combat the "increased used of cost-effective telemarketing techniques" in 1991. Pub. L. No. 102-243, 105 Stat. 2394. Further, "Congress intended for the TPCA to protect individuals from the annoyance and cost of receiving certain types of telemarketing calls without their prior consent." *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014). In an attempt to do so, the TPCA provides it "unlawful for any person….to make any call…using any automatic telephone dialing system or an artificial or prerecorded voice….to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(iii); *see also Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020).

The TCPA creates private rights of action for violations of this provision. In addition to the Federal Communications Commission ("FCC") and the state Attorney Generals, a private party "may bring 'an action [for damages and injunctive relief] based on a violation of the statutory prohibition or the Commission's implementing regulations." *In re Joint Petition Filed by Dish Network, LLC*, Declaratory Ruling, 28 FCC Rcd. 6574, 6582–83 (May 9, 2013) (hereinafter, "*FCC Ruling*") (quoting 47 U.S.C. § 227(b)(1)(iii)).

To state a claim under § 227(b), a plaintiff must allege that the defendant was either directly or vicariously liable for the phone call. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014).

3

A seller is not directly liable for a violation of the TCPA unless it "initiates" a call by "tak[ing] the steps necessary to physically place a telephone call[.]" *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 742 (N.D. Ill. 2014) (quoting *FCC Ruling*). It follows then that a seller does not initiate calls which are made by independent telemarketers. *Smith*, 30 F. Supp. 3d at 771.

Alternatively, a TPCA plaintiff may utilize a vicarious liability theory to state a claim under § 227(b). To do so, the plaintiff must allege that the agent who placed the call did so under the defendant's express or apparent authority. *Warciak*, 949 F.3d at 357. "Express authority exists when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control." *Id.*; *see also Bilek v. Federal Insurance Co.*, 8 F.4th 581, 587 (7th Cir. 2021) ("Actual authority requires that at the time of an agent's conduct, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.") (internal citations and quotations omitted).  A plaintiff claiming express authority must allege that the "defendant controlled, or had the right to control, the agent(s) and the manner and/or means of their actions." *Clemons*, 2020 WL 4193997 at *1.

In contrast, a principal may be held liable under a theory of apparent authority if a third party "reasonably relies on the principal's manifestation of authority to the agent.[2]" *Warciak*, 949 F.3d at 357. An agent's statements to the third party are not enough to create apparent authority. *Id*. "[T]here must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief." *Clemons*, 2020 WL 4193997, at *5 (quoting *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1336–37 (7th Cir. 1995). In the context of the TPCA, allegations of a

---

[2] Vicarious liability may also be established through the principal's ratification of the agent's conduct. *FCC Ruling* at *6584. However, because Plaintiff does not pursue this theory here, the Court will not address it. See D. 8; D. 12.

contractual relationship between the agent and principal does not automatically warrant finding apparent authority. *See Warciak*, 949 F.3d at 357.

2. Discussion

Plaintiff alleges that Defendant violated the TPCA when either "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff and the other members of the" putative class using an unsolicited pre-recorded message. D. 8 at 8. Even if Defendant did not initiate the call, Plaintiff maintained that "[a]t minimum any party calling consumers and referring them to [Defendant's] website was acting with [Defendant's] apparent authority because it is completely implausible to believe that telemarketers are referring consumers to [Defendant's] without being directed or encouraged to do so by [Defendant] in some way." *Id*. at 5. Plaintiff continues on to state that the relationship between Defendant and this potential telemarketer will be revealed during discovery. *Id*.

Defendant seeks dismissal arguing that Plaintiff does not plausibly allege it was either directly or vicariously liable for the February call. Specifically, Defendant points to the lack of allegations as to the telephone number used to place the February call, the owner of that unknown number, and the identity of the representative. In rebuttal, Plaintiff highlights his allegations that, (1) the live representative stated "the company's website is www.2gig.com" and (2) the purpose of the pre-recorded message was to market products which "were associated with Defendants;" D. 8 at 5–6. Relying on the liberal pleading standards, Plaintiff contends this is sufficient to infer Defendant's liability.

1. Vicarious Liability

5

Plaintiff alleges that Defendant had either apparent or actual authority over the entity that placed the February call. D. 8 at 5. Defendant contends the FAC does not contain the necessary factual allegations to support an inference of an agency relationship. In response, Plaintiff seemingly abandons this theory and addresses solely the direct liability theory. *See* D. 12 at 8 ("Plaintiff's allegations directly identify Defendant as the source of the calls.").

Plaintiff's failure to respond to Defendant's challenges as to his vicarious liability theory likely constitutes waiver. *Diya Ahmad & N. Commc'ns, Inc. v. Starr Indem. & Liab. Co.*, No. 23-CV-04631, 2024 WL 182279, at *3 (N.D. Ill. Jan. 17, 2024) (recognizing that a failure to respond operates as a waiver, though not independent grounds for dismissal) (citing *Marcure v. Lynn*, 992 F.3d 625, 632–33 (7th Cir. 2021)); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (finding that failure to respond to an argument results in waiver). Further, where a party's response to a motion to dismiss does not address all the challenged claims, those challenges are "deemed confessed[.]" *Marcure*, 992 F.3d at 632–33 (quoting *Stanciel v. Gramley*, 267 F.3d 575, 577–78 (7th Cir. 2001)).

Even assuming waiver does not apply, the FAC fails to establish an agency relationship. Beginning with apparent authority, Plaintiff does not allege any communication, direct or indirect, between himself and Defendant that would indicate the representative he spoke with during the February 9 call was acting with its authority. *See Clemons*, 2020 WL 4193997, at *5.

The FAC alleges that "any part calling consumers and referring them to [Defendant's] website was acting with [Defendant] apparent authority because it is completely implausible to believe that telemarketers are referring to consumers to [Defendant's] website without being directed or encouraged to do so by [Defendant] in some way." D. 8 at 5. But that argument cannot be squared with the requirements of apparent authority: some manifestation between Defendant

6

and Plaintiff that would indicate the representative has authority to act on Defendant's behalf. The representative's statements directing Plaintiff to Defendant's website is insufficient to create apparent authority. *See Warciak*, 949 F.3d at 357 ("Statements by an agent are insufficient to create apparent authority."); *see also Clemons*, 2020 WL 4193997, at *5 ("The crux of their argument is: because the callers invoked [defendant's] brand, it was reasonable to assume [defendant] authorized the call. This, however, does not suffice because the assumption of authority is based on the third party's—the alleged telemarketers—manifestations, not [defendant's]"). Nor is the fact that the pre-recorded message promoted products which Defendant sold. Even if it did, Plaintiff makes no allegation that he relied on this authority. *See id*.

Relying on these same facts, Plaintiff also alleges that the representative had Defendant's actual authority to place the February 9 call. But, like his theory of apparent authority, Plaintiff does not sufficiently allege actual authority. In *Bilek v. Federal Insurance Company*, the Seventh Circuit found that plaintiff had alleged a plausible theory of express authority. But the factual allegations there were far more than what is before the Court. The *Bilek* plaintiff alleged that (1) the telemarketers made the calls in question to solicit the defendant's product; (2) the defendant authorized the telemarketers "to use its approved scripts, tradename, and proprietary information in making these calls;" (3) the telemarketer provided plaintiff a quote for defendant's health insurance; and (4) defendant's other agent then emailed callers these quotes and permitted the telemarketer to enter information into its system. *Id*. at 587.

In contrast, here, the entirety of Plaintiff's vicarious liability theory rests on the fact that the unidentified representative provided him with Defendant's website and that the prerecorded message marketed products Defendant offers. But this is insufficient to infer that the entity who placed the call was acting at Defendant's direction. *See Clemons*, 2020 WL 4193997, at *5; *see*

7

*also Fisher v. Alarm.com Holdings, Inc.*, 2018 WL 5717579, at \*3 (N.D. Ill. Nov. 1, 2018) (noting that directing the caller to defendant's website insufficient to create an agency relationship). But nowhere does Plaintiff attempt to define the alleged principal/agent relationship let alone allege that such relationship gave Defendant control of the agent's conduct. To the contrary, Plaintiff explicitly pleads that he does not know of the actual relationship between defendant and the "possible third-party calling consumers[.]" D. 8 at 5.

Absent any claim as to what control Defendant had on the manner and/or means of the underlying call, the Court cannot further assess whether the February call fell within the scope of the agency relationship. *See Bilek*, 8 F.4th at 587 (noting that express agency requires allegations that "(1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency.").

2.  <u>Direct Liability</u>

Plaintiff's opposition to the present Motion to Dismiss rests solely on a direct liability theory. However, this theory of liability is largely absent from the FAC, which primarily rests on vicarious liability. The only allegation suggesting direct liability is "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff[.]" D. 8 at 8.

In support of his argument that the FAC renders such liability plausible Plaintiff echoes the same argument he used under vicarious liability: the fact that the representative provided him the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible. Plaintiff claims that any more allegations as to the identity of the representative "or [the] mechanism responsible for physically placing the call" imposes a

heightened pleading standard. D. 11 at 5. But, again, that argument cannot find support in this Circuit's case law.

For example, in *Warciak v. Subway Restaurants, Inc.*, the Seventh Circuit dismissed plaintiff's TPCA claim for failure to allege a plausible liability theory. 949 F.3d at 357. In *Warciak*, T-Mobile had texted plaintiff: "[t]his T-Mobile Tuesday, score a free 6" Oven Roasted Chicken sub at [Subway Restaurants, Inc. ("Subway")], just for being w/ T-Mobile. Ltd supply. Get app for details: http://t-mo.co/2bGiBjS." *Id*. at 356. Plaintiff attempted to sue Subway under the TPCA but failed to show that it was vicariously liable for the message. *Id*. at 357. The Seventh Circuit noted that the mere contractual relationship between Subway and T-Mobile was insufficient to establish the requisite agency relationship. *Id*.; *see also Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (noting that *Warciak* court dismissed the direct liability claim because plaintiff alleged a third party was responsible for the disputed telemarketing activities). Further, the content of the message itself indicated that T-Mobile maintained control over the message. *Warciak*, 949 F.3d at 357.

Here, Plaintiff does not explicitly allege that a third party – such as T-Mobile in *Warciak* – was responsible for initiating the February call. That being said, he does allege that he was connected with an unidentified "representative" at the conclusion of the recording. In furthering his direct liability theory, Plaintiff alleges "the call itself connected him to Defendant" but in the same breath concedes this direct connection was through an (again, unidentified) "representative's reference to Defendant's website and the products being marketed during the call." D. 12 at 9. Plaintiff alleges that this representative was either Defendant or its agent. As mentioned above, Plaintiff has failed to allege a vicarious liability theory. Plaintiff's failure to do so is similarly fatal to his direct liability theory.

9

Courts have found direct liability plausible where the plaintiff spoke with the defendant's employee or an agent within defendant's control. *See Woodard*, 2024 WL 942629, at *3 (citing *Abramson v. AP Gas & Electric (PA), LLC*, 2023 1782728, at *3 (W.D. Pa. Feb. 6, 2023)); *see also Bank v. CreditGuard of Am.*, No. 18 Civ. 1311 (PKC) (RLM), 2019 WL 1316966, at *8 (E.D.N.Y. Mar. 22, 2019) (finding direct liability where plaintiff alleged the "live operator" he was connected to after the recorded call who was "someone from" one of defendant's entities). However, courts have dismissed TPCA claims where the plaintiff "interacted with…promoters of [defendant], not employees, and [plaintiff] never claims that she interacted with nor received a call from [defendant] at all." *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024). The FAC does not specify which of these various categories the "representative" behind the February 9 call falls into. As the FCC noted, to impute direct liability in every instance where a telemarketer calls on a seller's behalf "would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer." *FCC Ruling*. Yet, Plaintiff's either/or theory of liability asks the Court to blur the line between the two, erasing the very distinction between seller and telemarketer.

In resisting this conclusion, Plaintiff fails to provide any controlling legal authority to support his position. Even the persuasive authority can be distinguished from the present facts. For example, in *Atkinson v. Choice Home Warranty*, the court denied defendant's motion to dismiss and found that plaintiff had stated enough facts to support a direct liability theory. No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023). Noting that the allegation that the defendant placed the call may be conclusory, the court nevertheless found that direct liability was plausible because "Plaintiff further alleges that when she 'asked if *the company making the calls* had a website,' the person on the phone provided [defendant's name].com' as the website." *Id*. at *3

10

(emphasis in original). In effect, the caller in *Atkinson* stated that the defendant initiated the call. Here, in contrast, Plaintiff does not allege that the caller made a similar statement but rather provided the company's website without indicating that the company also initiated the present call. *See* D. 8 at 4. This does not inform whether the caller was Defendant or a third-party telemarketer. Similarly, Plaintiff's other legal authority can be distinguished as those claims provided additional factual allegations to render liability plausible. *See Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270 (S.D.N.Y. 2024) (denying dismissal where, when returning the telemarketing call, the plaintiff heard a pre-recorded message indicating she had reached the defendant); *see also Taylor v. Suntuity Solar Ltd. Liab. Co.*, No. 8:23-CV-00694-MSS-AEP, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024) (finding direct liability plausible where one of the telemarketing calls was followed up with an email, sent by an individual claiming to be "a call center agent of the Defendant"); *Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 WL 556978, at *7 (E.D.N.C. Feb. 12, 2024) (denying a motion to dismiss where the plaintiff alleged that the caller asked her to call the defendant back). Given that the FAC alleges no direct connection between Defendant and the caller, Plaintiff cannot establish direct liability.

Plaintiff's inability to allege who the representative works for is also frustrates the very purpose of the pleading standards. As other courts in this context have noted, Plaintiff cannot put Defendant on notice of the allegations against it if the very pleading suggests that other parties could be wholly responsible. *Fisher*, 2018 WL 5717579, at *3 (citing *Bentley v. Bank of Am., N.A.*, 773 F.Supp.2d 1637, 1374 (S.D. Fla. 2011). Even Plaintiff's response further confuses this determination as he refers to "Defendants" at times, despite only one being named in the present action. *Compare* D. 12 at 4– 8, 10 (referring to multiple defendants) *with* D. 12 at 6, 8, 9 (referring to a singular defendant).

11

In sum, Plaintiff simultaneously alleges that the February 9 call was initiated by Defendant directly or by a telemarketer with Defendant's authority. Confusingly, he relies on the same facts to support both conclusions. But, under either theory, these factual allegations do not make liability plausible. Thus, he cannot state a claim and dismissal is warranted.

## IV.    LEAVE TO AMEND

A court's granting of a motion to dismiss operates as an adjudication on the merits and so, the dismissal is typically with prejudice unless otherwise specified. *Ryder v. Hyles*, 27 F.4th 1253, 1257-58 (7th Cir. 2022). The Seventh Circuit Court of Appeals has repeatedly held that a plaintiff shall be given at least one opportunity to amend her Complaint before the entire action is dismissed. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (collecting cases); *see also* Fed. R. Civ. P 15(a) ("The Court should freely give leave [to amend] when justice so requires."). Here, the Court finds it proper to grant Plaintiff leave to amend the Complaint. Plaintiff must file his Second Amended Complaint within twenty-one (21) days of this Order.

## V.    CONCLUSION

For the above reasons, Defendant Nice North America, LLC's [10] Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED in part and DENIED in part. Plaintiff's First Amended Complaint is DISMISSED without prejudice. Plaintiff is given leave to file an amended complaint within twenty-one (21) days of entry of this Order. Failure to amend in accordance with this Order will result in dismissal of the case with prejudice.

Entered on August 4, 2026.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge

12